JOHN E. KUHN, JR.
United States Attorney

RYAN D. TANSEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: Ryan.Tansey@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JAY ALLEN JOHNSON, <br><br> Defendant. | No. 4:21-CR-00019-RRB-SAO |

## GOVERNMENT SENTENCING MEMORANDUM

### SUMMARY OF SENTENCING RECOMMENDATIONS

**TERM OF IMPRISONMENT** ........................................................................ 37-months

**SUPERVISED RELEASE** ................................................................................ 3-years

**SPECIAL ASSESSMENT** ................................................................................ $100.00

In response to official actions with which he did not agree, the defendant made repeated, graphic, and violent threats to murder two democratically elected members of Congress. The defendant's felonious conduct included threats to assassinate the victims and to burn their properties. He asked one victim if she had ever seen what a .50 caliber shell "does to a human head." Later, the FBI located seven firearms in the defendant's residence, all of which were illegal for the defendant—a convicted felon—to possess.

The defendant's conduct is simply unacceptable in a democracy. Our system allows citizens to resolve political and legal conflicts through political and legal means. As political violence and domestic extremism grow, violent intimidation of public officials must result in serious criminal consequences. The sentence imposed must reflect the seriousness of the defendant's crimes and promote respect for the law. The defendant should be sentenced to 37-months' imprisonment, followed by three-years of supervised release and the three-year federal protective order described in the Plea Agreement.

I.  INTRODUCTION

   a. Case History

As referenced herein, Senator 1 and Senator 2 are sitting United States senators. On September 2, 2021, the defendant called Senator 1's Washington, D.C. office from Alaska and left a voicemail for Senator 1 stating, in relevant part: "Hey, [Senator 1] …. you, my dear, are not welcomed in the state of Alaska. I will do everything in my power to destroy your political shit show.  And I will do much more than that ok?  I will find out everything, where you're at. I will find out all your properties, and I will burn everything you hope to

Page 2 of 11                                              Govt. Sent. Memo.
                                                    United States v. Johnson
                                                      4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 2 of 11

have, and I will burn everything you hope to own, just like fucking ANTIFA. And I will use my mother fucking veteran's skills. .50 caliber shell… you ever seen what that does to a human head? Yeah well…"

On or about September 20 or 22, the defendant called Senator 2's Washington, D.C. office from Alaska and left a voicemail for Senator 2 stating, in relevant part: "sick and tired of all of you fucking politicians that continue to destroy our fucking country. I will get my fucking .50 caliber out. I will be having a GoFundMe page for the fucking shells. And I'm coming with a vengeance motherfucker."

On September 28, 2021, the defendant called Senator 1's Washington, D.C. office from Alaska and left a voicemail for Senator 1 stating, in relevant part: "fuck you [Senator 1] …. Your life is worth $5,000 dollars, that's all it's worth. And as you let in these terrorists, and assassins, guess what, I'm going to use them! I'm going to hire them!…. I'm going to use them to come and assassinate your fucking ass…. Be forewarned, bitch…. So quit talking your fucking bullshit. Just resign or get the fuck gone mother fucker, or die." In another voicemail, Johnson vowed to use "illegals for target practice."

In total, between April and September 2021, the defendant left 17 threatening voicemails on the office telephones of Senator 1 and Senator 2. He admitted that he knowingly made these threats to murder Senator 1 and Senator 2 intending to intimidate and interfere with the performance of their official duties, and to retaliate against them for performing their official duties.

Page 3 of 11     Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 3 of 11

After identifying the defendant as the source of these threats and arresting him at the Fairbanks International Airport, the FBI executed a search warrant on the defendant's Delta Junction residence and seized seven unsecured firearms. The defendant possessed these firearms despite knowing that it was illegal for him to do so in light of his previous felony DUI conviction for driving drunk while carrying a loaded pistol in a shoulder holster.

### b. Procedural History

On October 1, 2021, a Criminal Complaint was filed charging the defendant with threatening to murder a United States official, use of a telephone to willfully make a threat to kill, injure, or intimidate any individual, and transmitting in interstate or foreign commerce a communication containing a threat to injure the person of another. The FBI arrested the defendant on October 4, 2021, after observing him drive from Delta Junction to Fairbanks International Airport.

At his initial appearance Johnson's wife, Catherine Pousson-Johnson, testified on her husband's behalf as a proposed third-party custodian. The United States asked Ms. Pousson if she was aware her husband was making threats against two U.S. senators. She replied: "who hasn't?" Magistrate Judge Oravec subsequently detained the defendant based on his danger to the community.

On November 19, 2021, the defendant was indicted on the above referenced charges, plus an additional charge of felon in possession of seven firearms. On January 3, 2022, the defendant pleaded guilty to Counts 2 and 3 of the Indictment—threatening to

Page 4 of 11    Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO    Document 58    Filed 04/01/22    Page 4 of 11

murder two United States Senators—and admitted to the Criminal Forfeiture Allegation concerning the seven firearms. The parties agreed to a number of Sentencing Guidelines enhancements that are described in the PSR and Plea Agreement. *See* Dkt. 52 at 9-11.

The parties additionally agreed that the Court should enter a protective order pursuant to 18 U.S.C. § 1514(b) ordering that, for a period of three years starting on the date of the defendant's release from custody, the defendant shall not contact Lisa Murkowski or Dan Sullivan. "Contact" means direct or indirect contact, including contact in-person or any form of communication, including mail, phone, e-mail, and social media. "Indirect contact" includes contact with a person whom the defendant knows to be a spouse, child, parent, sibling, extended family member, or co-worker of either Lisa Murkowski or Dan Sullivan. "Co-worker" means a person employed with Lisa Murkowski or Dan Sullivan. The parties agree that the factual basis in the plea agreement establishes by a preponderance of the evidence that harassment of an identified victim in a federal criminal case exists pursuant to 18 U.S.C. S 1514(b)(1). *Id*. at 11-12. The United States has attached a proposed protective order hereto as Exhibit A.

## II. SENTENCING GUIDELINES CALCULATION

The maximum sentence for Threatening to Murder a United States Official, in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4), is 10 years' imprisonment, a $250,000 fine, 3 years' supervised release, and a $100 special assessment.

The Probation Officer calculates the defendant's total offense level to be 20 in Criminal History Category I. *See* PSR ¶¶ 41, 54. This results in an advisory Guidelines

Page 5 of 11

Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 5 of 11

Range of 33-41 months. *Id*. at 1. The Probation Officer recommends a sentence of 33 months' imprisonment, to be followed by a three-year term of supervised release.

### III. GOVERNMENT'S RECOMMENDATION

The United States asks the Court to sentence the defendant to 37-months' imprisonment, followed by a three-year term of supervised release and the three-year protective order jointly agreed upon by the parties. This sentence recognizes the defendant's history and characteristics, and the serious nature and circumstances of his conduct. It is sufficient, but not greater than necessary to deter the defendant and others from future criminal activity, and to protect the public. Furthermore, this sentence does not result in an unwarranted sentencing disparity.

#### a. The Nature, Circumstances and Seriousness of the Offense

The nature and circumstances of the defendant's offenses are serious. In a time of increased political conflict, and escalating threats of political violence, the defendant chose to make explicit, vivid threats to kill members of Congress and burn their families' properties. The defendant's threats were explicitly made in retaliation for official actions taken by duly elected representatives with whom he disagreed. Our democracy provides all citizens with legitimate opportunities to make their voices heard and to influence the actions of their elected officials. The defendant could have organized lawful protests. He could have contributed time or money to promote candidates with whom he agreed or oppose those with whom he disagreed. The defendant could have contacted the victims and provided evidence or arguments in support of the defendant's positions. He did none of

Page 6 of 11

Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 6 of 11

these things. Instead, he chose to make vile, violent, and felonious threats against the lives of two U.S. Senators:

> Your life is worth $5,000 dollars, that's all it's worth. And as you let in these terrorists, and assassins, guess what, I'm going to use them! I'm going to hire them!…. I'm going to use them to come and assassinate your fucking ass….
>
> ****
>
> Be forewarned, bitch…. So quit talking your fucking bullshit. Just resign or get the fuck gone mother fucker or die."
>
> ****
>
> .50 caliber shell… you ever seen what that does to a human head?
>
> ****
>
> I will find out everything, where you're at. I will find out all your properties, and I will burn everything you hope to have, and I will burn everything you hope to own

These threats were not only incredibly serious, but they were also repeated numerous times over the course of several months. This was not a one-off event or an overly emotional reaction to some specific occurrence. The FBI identified 17 separate voicemail messages left by Mr. Johnson over the course of five months from April through September. That itself is highly unusual. Further, the defendant made these threats with the express goal of changing the decisions of democratically elected officials or forcing them to resign through intimidation and death threats. Every single time he did this, he made it harder for the Senators and their staff to do their jobs. The defendant specifically referenced decisions of the elected officials and specific time periods. He professed to having specific experience that would enable him to carry out these threats. He communicated his threats

Page 7 of 11  Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 7 of 11

in a way that was clearly intended to cause fear and concern. And critically, the Senators and their staff who received these threats had no way of knowing if the defendant would really go through with them, if their lives were really in danger. That is why these statements fall in the heartland of the prohibition against "true threats," which is meant to "protect individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992) (Scalia, J.). Indeed, in this case the FBI located seven firearms in the defendant's residence after he was arrested, substantially increasing "the possibility that the threatened violence [would] occur." *Id*.

Despite his professed concerns for our country, the defendant's conduct showed that when he disagreed with the actions of democratically elected representatives, he felt justified in attempting to influence their official actions through violent threats and intimidation. Sadly, political violence of all stripes has become a clear and present danger to public safety and the functioning of our democracy. The defendant's conduct showed his rejection of that democracy and his willingness to resort to repeated violent threats when duly elected representatives take actions with which he disagrees.

b. **The History and Characteristics of the Defendant.**

The defendant has a history of drinking and driving and of combining firearms with alcohol. The PSR identifies six separate DUI convictions spanning multiple decades, as well as convictions for assault and firearms offenses. Indeed, his 2016 felony DUI conviction involved the defendant driving at nearly twice the legal limit while carrying a

Page 8 of 11

Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 8 of 11

pistol in a shoulder holster. Unfortunately, the defendant clearly has not learned from these previous offenses, nor has he ever served significant prison time. Indeed, prior to his arrest in this case the FBI observed the defendant drive from Delta Junction to Fairbanks International Airport despite the fact that his driver's license was suspended for 99-years after his 2016 felony DUI conviction. He also illegally possessed seven firearms in this case. This further demonstrates the defendant's dangerousness and underscores his complete lack of respect for the law and authority.

The defendant's alcohol abuse also appears to have played a role in his conduct in this case. Although he has experienced periods of sobriety, he has consistently reverted back to alcohol and combining firearms and threats with alcohol. This counsels in favor of a longer prison sentence, as other remedies previously imposed by courts—including Fairbanks Wellness Court—have had no enduring impact on the defendant's sobriety or behavior. The only thing left to deter the defendant and protect the community is a lengthy prison sentence.

### c. The Need for Adequate Deterrence and Protection of the Public

The issue of general deterrence is a particularly important factor in cases of this nature where the Court can send a message that deters "others from threatening officials based on their political viewpoint." *United States v. Pratersch*, 808 F. App'x 768, 771 (11th Cir. 2020) (finding guidelines sentence substantively reasonable in threat case). The law clearly forbids using threats of violence against members of Congress in order to influence Congressional action. *See* 18 U.S.C. § 115. A clear message from the Court that individuals

Page 9 of 11

Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 9 of 11

who break these laws will face real and meaningful consequences is important. The need for the sentence to provide specific deterrence to this particular defendant for this conduct also weighs in favor of the term of incarceration. While the defendant has accepted responsibility by pleading guilty, his remorse for his actions only arose after it became clear he would face consequences. A sentence of imprisonment of 37 months would adequately deter the defendant from future criminal conduct while promoting respect for the law.

## IV. CONCLUSION

For the reasons stated herein, the United States respectfully asks the Court to impose a sentence of 37-months' imprisonment, followed by a three-year term of supervised release and the requested three-year federal protective order attached hereto as Exhibit A. This sentence recognizes the seriousness of the defendant's crimes, his history and characteristics, and the need to deter others from engaging in similar activity.

//

//

//

//

//

//

//

//

Page 10 of 11

Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 10 of 11

RESPECTFULLY SUBMITTED this 1st day of April, 2022, in Fairbanks, Alaska.

JOHN E. KUHN, JR.
United States Attorney

*s/ Ryan D. Tansey*
RYAN D. TANSEY
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the
foregoing was served electronically
on all counsel of record
via the CM/ECF system:

*s/ Ryan Tansey*
Office of the U.S. Attorney

Page 11 of 11　　Govt. Sent. Memo.
United States v. Johnson
4:21-CR-00019-RRB-SAO

Case 4:21-cr-00019-RRB-SAO   Document 58   Filed 04/01/22   Page 11 of 11